# In the United States Court of Federal Claims

Case No. 02-197C
Filed: June 8, 2007
FOR PUBLICATION

* * * * * * * * * * * * * * * * * * * * * * *

**ADVANCED TEAM CONCEPTS, INC.**

*Plaintiff,*

v.

**THE UNITED STATES,**

*Defendant.*

* * * * * * * * * * * * * * * * * * * * * * *

Motion for Summary Judgment;
Motion for Clarification;
Damages; *Christian* Doctrine

*Charles H. Steen*, Dallas, Texas, for Plaintiff.

*Steven M. Mager*, Trial Attorney, *Jeanne E. Davidson*, Acting Director, and *Deborah A. Bynum*, Assistant Director, Commercial Litigation Branch, Civil Division, and *Peter D. Keisler*, Assistant Attorney General, United States Department of Justice, Washington, D.C., for Defendant.

## OPINION and ORDER

**SMITH, Senior Judge.**

This case is before the Court on Defendant's Motion for Clarification of the Court's Liability Opinion and Plaintiff's Motion for Summary Judgment on Damages and Response to the Government's Motion for Clarification. Previously, the Court granted partial summary judgment for Plaintiff, Advanced Team Concepts ("ATC"), finding that there was an implied-in-fact contract for the 2001 academic year.[1] The Court further granted partial summary judgment for Defendant.

[1] *Advanced Team Concepts, Inc. v. United States*, 68 Fed. Cl. 147, 151 (2005). To this point, the terms "academic year" and "fiscal year" have been used interchangeably by the parties and the Court. To alleviate any confusion, the Court defines both time periods as running from October thru September. This clarification applies to this Opinion and the Court's Opinion and Order of September 28, 2005 ("Liability Opinion"). Therefore, the 2001 academic year ran from October 1, 2000 thru September 30, 2001, and October 1, 2001 began the 2002 academic year.

This was based on the finding that there was no implied-in-fact contract for the 2002 academic year between Plaintiff and the national customer service training facility for the Immigration and Naturalization Service, the Leadership Development Center ("LDC"). Following the Court's Liability Opinion, the Government filed a Motion for Clarification. In response, ATC filed a Motion for Summary Judgment on Damages and Response to the Government's Motion for Clarification. Reply briefs were filed and oral argument was held. However, the Court reserved judgment and ordered additional briefing on the issue of damages. Thereafter, the parties submitted supplemental motions for summary judgment and oral argument was again held. The Court has considered these motions and filings in finding the following.

It is apparent to the Court that in order to determine the damages portion of this litigation two questions must be answered. The first question is how many canceled classes were covered by the implied-in-fact contract between ATC and LDC. ATC argues that it should be compensated for a total of twenty-eight classes that had been scheduled and thereafter canceled by LDC, minus mitigation. The Government argues that only eighteen of the twenty-eight classes were scheduled for the 2001 academic year, the point at which the Court severed liability in its previous opinion. The Government further argues that under the *Christian* Doctrine, ATC should be awarded damages for no more than seven of the eighteen classes. The Court, however, finds that ATC is entitled to recover for all eighteen classes canceled during the 2001 academic year. Therefore, the Court **GRANTS IN-PART** Plaintiff's Motion for Summary Judgment on Damages and **GRANTS**, to the extent stated in this Opinion, Defendant's Motion for Clarification.

The second question is whether a genuine issue of material fact exists sufficient to prevent the award of monetary damages to ATC under the summary judgment standard. With regard to the amount of damages to be awarded, the Court shall **DEFER** its ruling at this time.

## FACTS[2]

On April 3, 2000, LDC Director Jennifer Lee assigned the 2001 academic year classes to ATC. *Pl. App. 142-44, 248*. Later, on July 6, 2000, Director Lee sent an email to ATC checking dates for ten additional classes beyond the 2001 academic year and into the first quarter of the 2002 academic year. *Id.* at *143, 258.* Director Lee retired on November 3, 2000 and was subsequently replaced by Lyle Langton. *Id.* at *273, 304, 307, 432*. Three weeks later, Director Langton informed ATC that it would be terminated from teaching its seven remaining writing classes on the 2001 academic year schedule. *Id.* at *131, 367*. LDC did not cancel the classes, only ATC's participation

[2] A complete recitation of the facts can be found in the Court's Liability Opinion. The facts contained herein are most relevant to the present issue of damages.

in them.[3] *Id.* at *129, 131*. Director Langton also canceled an additional eight sections (eleven classes total) without rescheduling them as former Director Lee had done previously. *Pl. Compl.* ¶ *134*; *Pl. App. 126*; *Pl. Suppl. Br. Hrg. Ex.*

On June 27, 2001, Director Langton circulated the class schedule for academic year 2002, prefacing it with an email informing its vendors that LDC was assessing its courses with the potential to change course content and delivery. *Pl. App. 429, 435*. Director Langton further informed the vendors that he would contact them when he finished the review. *Id.* Finally, on September 14, 2001, Director Langton informed ATC that LDC would not be utilizing its services for the remainder of academic year 2001 and 2002. *Id.* at *99, 131, 156, 425*.

## **DISCUSSION**

In the Liability Opinion, the Court held that an implied-in-fact contract existed between ATC and LDC for the 2001 academic year. The Court further found that an implied-in-fact contract did not exist for the 2002 academic year. Therefore, the Court must now focus its attention on the amount of damages ATC may recover as a result of LDC's breach of the implied-in-fact contract. ATC filed its Motion for Summary Judgment on Damages pursuant to RCFC 56. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

The Government contends that ATC is not entitled to summary judgment because there still remains a question of fact with regard to the amount of damages to be awarded. The Government further contends that ATC has not provided sufficient evidence with regard to any additional costs incurred, costs avoided, or mitigation of damages. Additionally, the Government asserts that ATC is entitled to recover damages for no more than seven classes. At this time the Court is inclined to agree with the Government with regard to summary judgment on the amount of damages to be awarded, because more evidence appears to be necessary. However, the Court finds that it can determine the number of classes ATC is entitled to under the contract. That number is eighteen.

### **1. Eighteen Classes Covered by Implied-In-Fact Contract**

ATC requests damages for twenty-eight classes scheduled by former Director Lee which were subsequently canceled by Director Langton. *Pl. App. 131, 248, 258.* Eighteen of those classes were scheduled for the 2001 academic year. *Id.* at *131, 248.* The remaining ten classes were tentatively scheduled for the first quarter of the 2002 academic year. *Id.* at *131, 258.* ATC argues that because the ten additional classes were originally scheduled for the end of the 2001 calendar

---

[3] Retired Director Lee, and her new firm, Giraffe Consultants, took over those courses. *Id.* at *307, 425.*

year by former Director Lee, these classes should be included in the calculation of damages. *Pl. Mot. S.J. on Damages* at *3* (citing *Pl. App. 258*); *Hrg. Tr. 15-17* (Oral Argument May 22, 2007) ("*Tr*.").

The Government argues that ATC cannot recover damages for the ten additional classes because the Court's Liability Opinion severed liability at the end of the 2001 academic year, which ended September 30, 2001. The Government further contends that the act of setting a tentative schedule for the first quarter of the following year was not a long standing practice under former Director Lee and not all communications between LDC and ATC constituted a contract. *Def. Resp. to Pl. Mot. S.J.* at *10*; *Tr. 23-26*. The Court agrees. It is clear that the additional ten classes are not compensable because they were not scheduled to occur during the 2001 academic year and were tentative. *Pl. App. 258* (July 6, 2000 Email from Director Lee to ATC tentatively scheduling class dates for the remainder of the 2001 *calendar year*). So the question is, of the remaining eighteen classes, how many may ATC recover damages for?

The Government contends that, pursuant to the *Christian* Doctrine, ATC should only be able to recover damages for seven of the eighteen classes that were canceled. The Government further contends that the Liability Opinion was vague with regard to whether ATC can recover damages for the remaining eleven classes, in light of the *Christian* Doctrine. Thus, the Government seeks clarification as to whether the *Christian* Doctrine applies to these additional eleven classes. Under the *Christian* Doctrine, a termination for convenience clause must be read into any government contract. *G. L. Christian & Assocs. v. United States*, 312 F.2d 418, 426 (Ct. Cl. 1963). As with any government contract, express or implied, the government enjoys the ability to terminate a contract for its convenience, absent bad faith on the part of the government. *Krygoski Constr. Co. v. United States*, 94 F.3d 1537, 1541 (Fed. Cir. 1996). Accordingly, the Government argues that the remaining eleven classes fall within the *Christian* Doctrine and ATC should not recover damages for those classes.

With regard to the eleven additional classes canceled by Director Langton during the 2001 academic year, the Government asserts that these classes were canceled for reasons unrelated to the seven subsequently taught by former Director Lee. Those reasons included low student enrollment and the September 11, 2001 terror attacks. *Pl. App. 125-26, 159-60, 341, 424*. The Government contends that ATC has not produced any evidence of bad faith other than the fact that the canceled classes where not rescheduled, which alone does not amount to bad faith. *Tr. 33-34*. Thus, the Government asserts that the *Christian* Doctrine should apply to the remaining eleven classes. However, these additional reasons provided by the Government do not save its *Christian* Doctrine argument. ATC is seeking damages because its classes were canceled and not rescheduled, not because of the reason *why* they were canceled. Under former Director Lee, the prior practice of the LDC contract was to reschedule classes, regardless of the reason why they were canceled. This was part of the implied-in-fact contract. It seems clear that the elimination of ATC for replacement by an "insider" was the bad faith that produced the breach. Director Langton could not allow ATC to teach the other eleven classes because then it would be obvious that the seven were taken away in bad faith and given to an insider. The result was the permanent cancellation of eighteen classes, not seven. Therefore, the *Christian* Doctrine does not apply and ATC is entitled to recover damages for all eighteen classes that were previously contracted for and ultimately canceled.

**2. <u>Monetary Damages</u>**

"Both the existence of lost profits and their quantum are factual matters that should not be decided on summary judgment if material facts are in dispute." *Holland v. United States*, 75 Fed. Cl. 483, 489 (2007) (citing *Cal. Fed. Bank, FSB v. United States*, 245 F.3d 1342, 1350 (Fed. Cir. 2001)). Here, it appears that some facts are still in dispute with regard to the amount of monetary damages suffered by ATC. At oral argument, the parties agreed that once the number of recoverable classes was determined, a settlement might be possible with regard to the amount of damages. Thus, because the Court has determined the number of recoverable classes, the Court shall defer its ruling until such time as the parties are able to confer and possibly stipulate to the amount of damages.

## CONCLUSION

Therefore, after careful review and consideration, the Court **GRANTS IN-PART** Plaintiff's Motion for Summary Judgment on Damages. The Court further **GRANTS**, to the extent stated in this Opinion, Defendant's Motion for Clarification. The Court finds that for academic year 2001, ATC is entitled to recover damages for eighteen canceled classes. With regard to the amount of damages to be awarded, the Court shall **DEFER** its ruling at this time. The parties are directed to confer regarding the need for trial or possible settlement as to this issue and a telephone status conference call shall be scheduled.

**IT IS SO ORDERED.**

<u>s/Loren A. Smith</u>
LOREN A. SMITH
Senior Judge