**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ADVANCED TEAM CONCEPTS, INC.** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | **No. 02-l97C** |
| **v.** | **)** | **(Senior Judge Smith)** |
| | **)** | |
| **UNITED STATES,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |

**PLAINTIFF'S SECOND SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**

Plaintiff Advanced Team Concepts, Inc. ("ATC") files Plaintiff's Second Supplemental Motion for Summary Judgment against Leadership Development Center ("LDC"), as follows:[1]

## I.
## PRELIMINARY STATEMENT

Few issues remain in this case. It is ATC's intention in this round of briefing to provide the Court with the tools needed to reduce this case to judgment without the necessity of trial.

***First***, there has been some confusion about how properly to treat and resolve the issue of "avoided costs" particularly as applied to sections scheduled for Meeker and terminated. All of the relevant and undisputed facts are before the Court. What remains is to apply the rules of decision.

***Second***, as regards the last block of classes scheduled for ATC by Director Lee before she retired, the meaning of Dir. Lee's email to ATC previously was not made concise for the Court. Dir. Lee's declaration makes it clear: It was an offer to ATC to teach the listed sections.[2]

[1]Pursuant to RCFC 5.2(a)(1) and (b)(3), an Appendix to Plaintiff's Second Supplemental Motion for Summary Judgment is filed herewith.

[2]In its Opinion and Order filed June 8, 2007 the Court excluded these ten sections from recovery. ATC requests that the Court exercise its plenary power and consider these sections again on the strength of Dir. Lee's declaration filed herewith as Exhibit "I".

## II.
## SUPPLEMENTAL FACTUAL BACKGROUND

### A. Supplemental Summary Judgement Evidence.

As supplemental summary judgment evidence ATC proffers: (1) the Verification of Larry Meeker, originally filed January 19, 2007 as Exhibit "H"; (2) the Declaration of Jennifer Lee, as Exhibit "I"; and (3) a Summary Table consolidating: (a) academic and calendar quarters, (b) sections canceled, (c) lost revenues, (d) costs avoided, and (e) damages.[3]

### B. As to Meeker, There Were No "Avoided Costs" to Offset.

The basic facts are undisputed. The point to be established is this: As to Meeker and his terminated sections, there were no "avoided costs" to offset. When LDC returned Meeker's time it had zero economic value.

#### 1. The Economic Mechanics of Avoided Costs.*(Endnote)

Avoided costs, a species of mitigation, actually involves two "sales". The first sale occurs when inputs are purchased to perform a contract. The second sale occurs following cancellation of the contract when inputs are returned, applied to another contract, or sold into a different market.

Consider an ordinary contract for delivered goods. The person performing the contract must purchase inputs. When he does, goods move from vendor-to-contractor, and money moves from contractor-to-vendor. Suppose this contract is canceled on the eve of performance. In that event, the contractor might be able to return the inputs to his vendor, meaning goods move from contractor-to-vendor, and money moves from vendor-to-contractor. In other words, the contractor sells goods

---

[3]No new information is presented in the Summary Table. It merely pulls together information previously tendered to the Court as summary judgment evidence to put it in a useful form. *See*, *e.g.*, ATC's second interrogatory resp. Nos. 16. Pl. App. 20-25.

back to the vendor, a second sale.

The contractor also might use the inputs in performing another contract. In that event the second sale occurs when the contractor performs for a different customer. For another example, if the inputs can not be returned or used toward another contract, the contractor might be able to sell them in a suitable secondary or unrelated market (*i.e.*, liquidation sale, direct sale, eBay, *et cetera*).

All of these mechanisms avoid costs, and all require a second sale. Indeed, these second sales are the gravamen of avoidance, by which unused resources are re-sold and put to another use. Sometimes, however, inputs can not be returned or re-sold because there is no market for them or, stated differently, no "value in exchange" left in them. Opened food can not be returned, for one example. Specialty and custom products also are susceptible to not having a market for a second sale. In these events, the inputs' costs can not be avoided.

So it can be with time, particularly with specialized time. The famous Shirley MacLaine case studied by first-year law students provides a good example.[4] MacLaine secured a contract for a movie that was canceled just before filming began. There was no suitable replacement work for MacLaine for the same time. The result was that MacLaine was entitled to recover her contract amount at summary judgment. At the first sale the contract parties mutually valued MacLaine's time at the contract price. When her time was returned to her, however, it could not be re-sold because movie companies make their contracts well in advance of filming. In other words, at the time of the first sale her time was valued at the contract price. When her time was returned to her it was stripped of its economic value. Although MacLaine's time was returned to her, and she thereby "avoided"

[4] *Parker v. Twentieth Century-Fox Film Corp.*, 3 Cal.3d 176, 474 P.2d 689 (1970).

using it to make the movie, its money value was gone as a consequence of breach.[5]

**2. Facts Relating to ATC's "Costs Avoided".**

**a. Cadre Instructors Compensation.**[6]

ATC previously proffered its summary judgment evidence of avoided costs for sections that were to be taught by cadre instructors but were canceled in breach of the parties' contract. In short, ATC paid its cadre only for sections actually taught. In the table below the monies ATC did not pay its cadre for canceled sections are deducted from the contract prices.

**b. Meeker's Compensation.**[7]

ATC paid Meeker, its shareholder and President, only as the corporation's residual claimant. ATC did not pay Meeker for teaching. At an accounting level, then, it is completely accurate to say that whenever a Meeker section was canceled no cash costs were avoided. But that does not end the inquiry because imbedded somewhere in Meeker's residual claimant income was implicit compensation for teaching. The fully implicit nature of Meeker's teaching income, however, means there will never be an express and correct dollar amount attributable to his teaching, or to costs avoided due to termination. A different conceptual approach is required.

**c. The Economic Mechanics of Meeker's Time.**

When Meeker sections were canceled in breach, those increments of Meeker's time were returned to ATC. In that sense Meeker's time was "saved", or "avoided" because it was not used.

---

[5]This case, moreover, actually is clearer than Shirley MacLaine's case. In *MacLaine*, the breaching studio offered her a replacement movie. But the replacement work was sufficiently different so that she was legally justified in declining it. Here, LDC certainly did not offer ATC any replacement work. Rather, Meeker's time was simply returned to him.

[6]Exhibit "H".

[7]Exhibit "H".

But, these descriptors do not translate into money savings, for the following reason: Meeker's time that LDC purchased by contract was valuable at the contract price when LDC agreed to buy it; but, when LDC terminated the contract and gave back Meeker's time, its money value was zero, because there was no place for a second sale, no remaining value in exchange.

At the first sale, Meeker's time was priced by contract, and pre-dedicated and tailored specifically to LDC's needs. At termination, all of ATC's advance work was long done, and all that was left was the teaching. Upon breach, that time was returned to Meeker and ATC, but could not, despite best efforts, be re-sold. It had no cash value outside LDC. As in the MacLaine case, although Meeker's time was put back to him, its money value was already gone. There was no opportunity for a second sale and, therefore, no money costs capable of avoidance.

## C. **Mitigation.**

As plaintiffs previously proffered, when LDC terminated ATC, all of Meeker's teaching time, and more, was rapidly applied to seeking replacement work. Indeed, Meeker expended many more hours than were saved, with nearly no mitigation success. In short, mitigation was unsuccessful.

## D. **Director Lee's Email Was an Unequivocal Offer.**[8]

To date, the clear and unequivocal intention of Director Lee's email to Meeker, dated July 6, 2000, was not concisely presented to the Court. Dir. Lee's summary judgment declaration now makes her meaning clear: It was an offer to ATC to teach the listed sections during the period October through December 2001 according to LDC's usual and customary terms.

As ATC asserted at every point in this action, ATC accepted all of Dir. Lee's offers, including this one, dedicated its resources, and stood prepared to deliver its sections.

[8] Exhibit "I".

## III.
## SUMMARY OF ARGUMENTS

***First***, until now, the Government has urged that ATC is not entitled to summary judgment on damages because it failed to proffer sufficient summary judgment evidence on the issue of avoided costs. But avoided costs -- like offset and all other species of mitigation -- is an affirmative defense, on which the Government bears the burden. Absent controverting summary judgment evidence from the Government that there were costs, factual money costs, that were capable of avoidance and that were not avoided, ATC is entitled to summary judgment.

***Second***, until now the clear and unequivocal intention of Director Lee's email to Meeker, dated July 6, 2000, was not concisely presented to the Court. That question is now resolved: It was an offer to teach specified sections at LDC during October through December 2001. With that, ATC should be entitled to inclusion of that block in its damages award.

## IV.
## THE STANDARDS TO BE APPLIED

### A. The Standards to Be Applied.

#### 1. The Parties' Respective Burdens at Summary Judgment.

Summary judgment is warranted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[9] A fact that might significantly affect the outcome of the litigation is material.[10] A movant is entitled to summary judgment if the nonmovant fails to make a showing sufficient to establish an element of its case on which it will bear the burden

[9]RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

[10]*Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

of proof at trial.[11]

**2. Mitigation - Whether Cast as Avoided Costs, Offsets, or Other Opportunities - Is an Affirmative Defense on Which the Government Bears the Burden of Proof.**

Factually, plaintiff has the burden to adduce evidence showing that a "sufficient basis exists for estimating the amount of lost profits with reasonable certainty."[12] In this respect, "[d]amages need not be calculable with mathematical accuracy and are often at best approximate. This is especially true for items such as loss of good will as to which great precision cannot be expected."[13]

The burden is on the breaching party, however, to show that reasonable possibilities for mitigation existed.[14] The breaching party may not invoke the rule of mitigation "as a basis for hypercritical examination of the conduct of the injured party, or merely for the purpose of showing that the injured [party] might have taken steps which seemed wiser or would have been more advantageous to the defaulter."[15] In short, the issue of whether the Government is entitled to an avoided costs offset is an affirmative defense, on which the Government bears the burden of proof.[16]

---

[11] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

[12] *American Federal Bank, FSB v. U.S.*, 72 Fed.Cl. 586 (Fed.Cl. 2006) (citing *Energy Capital Corp. v. United States*, 302 F.3d 1314, 1325 (Fed.Cir. 2002) (citing *Chain Belt Co. v. United States*, 127 Ct.Cl. 38, 115 F.Supp. 701, 714 (1953))).

[13] *Id*. (quoting Restatement (Second) Contracts § 352 cmt. a).

[14] *Id*. (citing *Koby v. United States*, 53 Fed.Cl. 493, 497 (2002)).

[15] *Id*.

[16] *See F.T.C. v. National Business Consultants, Inc.*, 376 F.3d 317 (5th Cir. 2004) (party asserting affirmative defense bears the burden of proving the defense); *Crescent Cigarette Vending Corporation v. Toca*, 271 So.2d 53 (La.App. 4th Cir.1972) (party pleading affirmative defense of set-off bears burden of proving the defense); *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1230 (10th Cir. 2000) ("A defendant bears the burden of proving the affirmative defense of failure to mitigate.").

### 3. The Elements of Contract.

The elements of an implied-in-fact contract are the same as those of an express contract-namely an offer, acceptance, consideration, possession of the requisite authority by the government actor, and a mutual intent to contract.[17] Plaintiff must establish four elements of a contract with the United States: (1) lack of ambiguity in offer and acceptance; (2) mutuality of intent to contract; (3) actual authority to bind the Government; and (4) consideration.[18] The parties must possess contractual intent and their agreement must be sufficiently definite to be enforced.[19]

## B. Application of the Standards to the Facts.

***First***, as set out above, when LDC terminated ATC the only costs capable of being avoided, in money terms, were the cadre costs that were not paid for sections that were not taught. Meeker's time, however, was rendered valueless, and so, there simply were not any avoidable money costs relating to Meeker. Accordingly, unless the Government comes forward now with concise evidence of costs that actually were capable of avoidance, ATC is entitled to summary judgment based upon its contract price, minus its avoided cadre costs.

***Second***, the correct treatment of Director Lee's email regarding LDC's schedule for October through December 2001 is now fully evident. She offered these sections to Meeker and his company to teach pursuant to the parties' usual and customary terms. The remaining elements required to

---

[17]*Forest Glen Properties, LLC v. U.S.*, --- Fed.Cl. ----, 2007 WL 4527913 (Fed.Cl. 2007) (citing *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325-26 (Fed.Cir. 1997); *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed.Cir. 1990); *Brunner v. United States*, 70 Fed.Cl. 623, 626-27 (2006)).

[18]*Id*. (citing *Pennsylvania Dep't of Public Welfare v. United States*, 48 Fed.Cl. 785, 787-788 (2001) (citing *Nevin v. United States*, 43 Fed.Cl. 151 (1999))).

[19]*Id*. (citing *Modern Sys. Technology Corp. v. United States*, 24 Cl.Ct. 360 (1991).

establish that these sections should be included in ATC's award -- mutual intent, authority, and consideration -- were proven in earlier submissions. Therefore, ATC is entitled to summary judgment that includes these terminated sections.

## V.
## SUMMARY AND CONCLUSIONS

For the foregoing reasons, the Court should grant summary judgment disposing of this case, and award ATC damages calculated as follows:[20]

**Eighteen (18) Sections During Academic Year 2001 (October 2000 thru September 2001)**

| Calendar Quarter ↣ | 10-12/2000 | 01-03/2001 | 04-06/2001 | 07-09/2001 |
|---|---|---|---|---|
| Lost Revenue | $32,000.00 | $30,000.00 | $52,000.00 | $104,000.00 |
| Costs Avoided | ($ 7,000.00) | ($ 3,500.00) | ($12,600.00) | ($ 14,000.00) |
| Damages | $25,000.00 | $26,500.00 | $39,400.00 | $90,000.00 |

**Ten (10) Sections During First Quarter Academic Year 2002 (October thru December 2001)**

| Calendar Quarter ↣ | 10-12/2001 |
|---|---|
| Lost Revenue | $88,000.00 |
| Costs Avoided | ($16,100.00) |
| Damages | $71,900.00 |

**Cumulative Total Damages $252,800.00**

Respectfully submitted,

Date: January 31, 2008

By: s/ Charles H. Steen

Charles H. Steen
Texas Bar No. 00785040
The White House on Turtle Creek
2401 Turtle Creek Blvd.
Dallas, Texas 75219
Telephone: (214) 559-4446
Telecopier: (214) 559-4423

**ATTORNEY FOR PLAINTIFF ADVANCED TEAM CONCEPTS**

[20]Exhibit "H".

## CERTIFICATE OF SERVICE

I certify that I have caused a true and correct copy of the above and foregoing Plaintiff's Second Supplemental Motion for Summary Judgment to be served upon defendant, by and through its attorney of record, Steven Mager, Esq., Commercial Litigation Branch, Civil Division, Department of Justice, 1100 L Street, N.W., Attn: Classification Unit, 8th Floor, Washington, D.C., 20530, via Federal Express, on January 31, 2008.

s/ Charles H. Steen
Charles H. Steen

**Endnote**

*Plaintiff's counsel holds the following credentials, which are brought to bear in making and advocating this factual analysis, as an attorney.

| | |
|---|---|
| University of Virginia: | Ph.D. Economics 1993 (Prof. Kenneth Elzinga, Dissertation Chair); |
| Adjunct Professorships | Southern Methodist University<br>Principles of Microeconomics - 2002 through present; |
| | University of Texas - Arlington<br>Law & Economics - 2003 through present. |
| Publications: | *See* www.docsteen.com |