**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ADVANCED TEAM CONCEPTS, INC.** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | **No. 02-l97C** |
| **v.** | **)** | **(Senior Judge Smith)** |
| | **)** | |
| **UNITED STATES,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |

**VERIFICATION OF LARRY MEEKER IN SUPPORT OF PLAINTIFF'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT ON DAMAGES**

**STATE OF TEXAS** §
§
**COUNTY OF DALLAS** §

1. My name is Larry Meeker. I am over the age of eighteen, and have never been convicted of a felony, or crime involving moral turpitude. The facts stated herein are based on my personal knowledge, and are true and correct. I am the President of Advanced Team concepts, Inc., plaintiff in the above-styled and numbered Cause. I am duly qualified and authorized to make this verified statement.

**A. The Course Sections for Which Damages Are Calculated Based on the Court's Summary Judgment Ruling on Liability.**

2. As supplemental summary judgment evidence, attached is a true and correct statement of ATC's damages net of any "costs avoided" by ATC.

3. More specifically, in preparing the attached statement I looked to and incorporated the Court's Order and Opinion filed September 28, 2005, which strikes a demarcation, dividing the parties' relationship during now-retired Director Lee's tenure, versus during Director Langton's

tenure as LDC's director. The Court found that under Director Lee ATC had a contract, but that "When Director Langton circulated the 2002 year schedule, he clearly indicated that there would be a reduced course schedule[.]"[1]

4. Since then, it is my understanding, the Court indicated in conferences with counsel that damages in this matter should be calculated net of any "costs avoided" by ATC. Specifically, if there were particular payments ATC did not make because a section was canceled, those amounts should be deducted from ATC's lost revenues.

5. Accordingly, the attached statement was prepared to subtract the costs ATC did not have to pay out from the revenues it was supposed to receive for the sections offered by Director Lee and which ATC accepted.

**B. <u>How ATC Received Money and Paid its Bills.</u>**

6. As a threshold matter, it is necessary to understand a little about how ATC received money and paid its bills. On the revenue side, ATC invoiced LDC, and was paid, on a per section taught basis.[2] In turn, ATC's instructor cadre, meaning instructors other than myself, were then paid set rates for teaching their classes. For the canceled sections at issue, which cadre instructors did not teach, ATC did not have to pay them for those sections. In that line-item accounting sense, those

---

[1]Director Lee's last full fiscal-year course schedule, created before she retired, was for fiscal year 2001. ATC accepted these assignments, and stood ready to meet them all, to the exclusion of other work. Before retiring Director Lee also requested that ATC teach ten courses during the first quarter of fiscal year 2002, which ATC also accepted to the exclusion of other work.

[2]As the Court already is aware, whenever Director Lee canceled sections they were subsequently replaced, without any net loss of sections. Indeed, Director Lee normally added sections during the year. The practice of replacing lost sections stopped when Director Langton took charge.

costs were "avoided".[3]

7. On the other hand, as ATC's president and sole shareholder I did not receive any payments for teaching sections. Rather, I was the residual claimant of any profits after ATC's bills were paid. Moreover, it was always the case, as it is now, that whether I was teaching classes or not, I worked more than full time -- more than forty hours per week -- for ATC. Indeed, whenever ATC lost an LDC section that I would have taught, I consistently devoted that time to other duties for ATC.

8. As Director Langton canceled sections, and finally terminated ATC, I was compelled to redouble my executive efforts by seeking replacement work, and otherwise trying to mitigate the company's lost business. One thing that is certain is that I worked many more hours for ATC, as its president, seeking to mitigate the company's losses, than would have been required teaching the lost sections. Thus, with respect to the canceled sections I was supposed to teach, there were not any "costs avoided" and, indeed, there were not even any "implicit" costs that were avoided. Rather, as LDC's revenues decreased, my own labors for the company increased. The net result being that there were no costs avoided when my sections were canceled.

9. Taken together, there are two types of sections to consider. First, there are the sections that required the participation of ATC's cadre in addition to and other than myself. For those canceled sections, ATC did not have to pay its cadre instructors and, in that sense, those costs were "avoided". Second, are the sections that required my own participation. For those canceled sections there were no costs avoided.

---

[3]ATC's instructors were put to work performing other duties, however. Even so, on a per section basis cadre instructors were not paid for sections not taught.

**C. <u>The Damages Calculations.</u>**

10. The first three rows of the attached table lay out the calendar and fiscal quarters involved in the damages calculations.[4] The first rows denote ordinary calendar quarters. The second row sets out LDC's corresponding fiscal year quarters, and the third row sets out ATC's fiscal quarters (which are simply calendar year quarters).

11. The fourth row, denoted "Lost Revenue", sets out ATC's lost revenues for each of these quarters. Thus, ATC's lost revenues from lost sections during the period October through December 2000 were $32,000.00.

12. The fifth row, denoted "Costs Avoided", sets out the direct costs ATC avoided by not having to pay its cadre instructors for the sections that were lost. These are simply the amounts ATC would have paid its instructors had these sections been taught.

13. The sixth row, denoted "Difference", sets out the simple arithmetic difference between rows five and four, for each quarter.

14. The seventh row, denoted "Cumulative Damages", adds up the amounts in row six, from left to right, across the calendar and fiscal quarters from October 2000 through December 2001.

15. Taken together, the total revenues lost, minus the costs avoided, for the lost sections assigned by Director Lee, total: $252,800.00.

---

[4]These are the same periods set out *supra* at note 1.

**D. Verification.**

Pursuant to 28 U.S.C.A. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on December __, 2006

________________________________
Larry Meeker

| | | | | | |
|---|---|---|---|---|---|
| Calendar Qtr. --> | 10/2000-12/2000 | 01/2001-03/2001 | 04/2001-06/2001 | 07/2001-09/2001 | 10/2-01-12/2001 |
| LDC Qtr. --> | LDC Q1 01 | LDC Q2 01 | LDC Q3 01 | LDC Q4 01 | LDC Q1 02 |
| ATC Qtr. --> | ATC Q4 00 | ATC Q1 01 | ATC Q2 01 | ATC Q3 01 | ATC Q4 01 |
| Lost Revenue | $32,000.00 | $30,000.00 | $52,000.00 | $104,000.00 | $88,000.00 |
| Costs Avoided | $7,000.00 | $3,500.00 | $12,600.00 | $14,000.00 | $16,100.00 |
| Difference | $25,000.00 | $26,500.00 | $39,400.00 | $90,000.00 | $71,900.00 |
| Cumulative Damages | $25,000.00 | $51,500.00 | $90,900.00 | $180,900.00 | **$252,800.00** |