No. 02-197C
Senior Judge Smith

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ADVANCED TEAM CONCEPTS, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL SECOND MOTION FOR SUMMARY JUDGMENT ON DAMAGES

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

DEBORAH A. BYNUM
Assistant Director

STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L St. NW
Washington, D.C. 20530
Tele: (202) 616-2377

April 14, 2008

Attorneys for Defendant

# TABLE OF CONTENTS

**PAGE(S)**

I. Portions Of Plaintiff's Evidence Must Be Struck Or Disregarded By The Court. ........ 1

A. Dr. Steen Inappropriately Testifies As An Undisclosed Economics Expert Section II.B.1 Of Plaintiff's Brief. ........ 2

B. The Declaration Of Jennifer Lee Was Obtained In Violation Of The Rules Concerning Ex Parte Communications And The Applicable Department Of Justice Touhy Regulations. ........ 6

II. Plaintiff's Fiscal Year 2001 Damages Claim Exceeds The Scope Of Ms. Lee's Purported Implied Authority. ........ 9

III. Ms. Lee's July 6, 2000 E-Mail Does Not Constitute A Contract. ........ 11

IV. Advanced Team Concepts Fails To Meet Its Burden To Demonstrate That It Is Entitled To Summary Judgment On Damages. ........ 14

CONCLUSION. ........ 17

## TABLE OF AUTHORITIES

## CASES

PAGE(S)

Advanced Team Concepts v. United States,
68 Fed. Cl. 147 (2005). ........ 10, 11, 12

Advanced Team Concepts v. United States,
77 Fed. Cl. 111 (2007). ........ 11

Aghili v. Banks,
63 S.W.3d 812 (Tex. App. 2001). ........ 5

Algonac Mfg. Co. v. United States,
192 Ct. Cl. 428 F.2d 1241 (1970). ........ 15

Ammex, Inc. v. United States,
52 Fed. Cl. 555 (2002). ........ 11

Bishop v. United States,
26 Cl. Ct. 281 (1991). ........ 11

Bluebonnet Sav. Bank v. United States,
339 F.3d 1344 (Fed. Cir. 2003). ........ 14

Boca Raton Cmty. Hosp. v. Tenet Healthcare Corp.,
2006 WL 1523234 (S.D. Fla. 2006). ........ 9

Computer Prods. Int'l, Inc. v. United States,
26 Cl. Ct. 518 (1992). ........ 15

Crowley v. United States,
56 Fed. Cl. 291 (2003). ........ 11

DPJ Co. v. FDIC,
30 F.3d 247 (1st Cir. 1994). ........ 14

General Mills Supply Co. v. SCA Services, Inc.,
697 F.2d 704 (6th Cir. 1982). ........ 3, 4

Harrison v. Keystone Coca-Cola Bottling Co.,
428 F. Supp. 149 (M.D. Pa. 1977). ........ 4

Hercules, Inc. v. United States,
516 U.S. 417 (1996). .......... 13

Howell v. United States,
51 Fed. Cl. 516 (2002). .......... 15

MacArthur v. Bank of New York,
524 F. Supp. 1205 (S.D.N.Y. 1981). .......... 4

Mannhalt v. Reed,
847 F.2d 576 (9th Cir. 1988). .......... 3

Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n,
872 F. Supp. 1346 (E.D. Pa. 1994). .......... 2, 3

Parker v. Twentieth Century Fox Film Corp.,
474 P.2d 689 (Cal. 1970). .......... 15

Polycast Tech. Corp. v. Uniroyal, Inc.,
129 F.R.D. 621 (S.D.N.Y. 1990). .......... 6

RCS Enterprises v. United States,
57 Fed. Cl. 590 (2003). .......... 13

Rick's Mushroom Service, Inc. v. United States,
76 Fed. Cl. 250 (2007), aff'd, ___ F.3d ___, Fed. Cir. No. 2007-5137,
slip opinion (April 2, 2007). .......... 13

Smith v. Wharton,
78 S.W.3d 79 (Ark. 2002). .......... 5

United States ex rel. Sheldon Elec. Co. v. Blackhawk Heating and Plumbing Co.,
423 F. Supp. 486 (S.D.N.Y. 1976). .......... 4

United States ex rel. Touhy v. Ragen,
340 U.S. 462 (1951). .......... passim

United States v. Cunningham,
672 F.2d 1064 (2d Cir. 1982), cert. denied, 466 U.S. 951 (1984). .......... 3

United States v. Defazio,
899 F.2d 626 (7th Cir. 1990). .......... 3

United States v. Diabetes Treatment Centers of America,
474 F. Supp. 2d 75 (D.C. 2007). .......... 9

United States v. Kwang Fu Peng,
766 F.2d 82 (2d Cir. 1985)........................................................................................ 3

United States v. McKeon,
738 F.2d 26 (2d Cir. 1984)........................................................................................ 3

Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equip. Corp.,
546 F.2d 530 (3rd Cir. 1976). .................................................................................... 4

White v. Delta Const. Intern., Inc.,
285 F.3d 1040 (Fed. Cir. 2002)................................................................................ 14

Zenith Radio Corp. v. Hazeltine Research, Inc.,
401 U.S. 321 (1971)................................................................................................. 12

## STATUTES & REGULATIONS

5 U.S.C. § 301 ........................................................................................................... 8

10 U.S.C. § 2304(g). ................................................................................................... 10

31 U.S.C. § 1341(a)(1)(A). ......................................................................................... 13

31 U.S.C. § 1349......................................................................................................... 13

31 U.S.C. § 1350......................................................................................................... 13

48 U.S.C. § 253(g). ..................................................................................................... 10

6 C.F.R. §§ 5.41-.49...................................................................................................... 8

28 C.F.R. § 16.21(a)...................................................................................................... 8

48 C.F.R. § 2.101. ....................................................................................................... 10

## MISCELLANEOUS

American Bar Association Model Code Ethical Consideration 5-9. .............................................. 4

American Bar Association Model Rules of Professional Conduct 3.7. ................................ 2, 3, 5

American Bar Association Model Rules of Professional Conduct 4.2 . .................................. 6, 7

American Bar Association Formal Ethics Op. 95-396 (1995). ...................................................... 6

Rules of the United States Court of Federal Claims 7.1. .............................................................. 1

Rules of the United States Court of Federal Claims 26. ........................................................... 5, 6

Rules of the United States Court of Federal Claims 56. ............................................................... 1

Rules of the United States Court of Federal Claims 83.2. ............................................................ 2

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ADVANCED TEAM CONCEPTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02-197C |
| | ) | (Senior Judge Smith) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**SUPPLEMENTAL SECOND MOTION FOR SUMMARY JUDGMENT ON DAMAGES**

Pursuant to Rules 7.1(b), (c) and 56 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States respectfully requests submits its response to plaintiff's second supplemental motion for summary judgment on damages.

Although this is plaintiff's fourth attempt to characterize its damages, the second supplemental motion filed by the plaintiff, Advanced Team Concepts ("ATC"), does not resolve the issues previously highlighted in our opposition to ATC's prior motion for summary judgment on damages or the concerns previously expressed by the Court, and significant material facts remain at issue. Further, ATC relies upon evidence that is not properly before this Court. Accordingly, we renew our opposition and respond to those matters specifically highlighted in ATC's second supplemental motion.

## I. Portions Of Plaintiff's Evidence Must Be Struck Or Disregarded By The Court

We respectfully requests that the Court strike or disregard sections II.B.1 of plaintiffs' brief, the declaration of Jennifer Lee, and related references in ATC's January 30, 2008 filing. ATC's counsel improperly testifies as an expert witness. Further, ATC's counsel has improperly obtained a declaration from Jennifer Lee, the former director at the Leadership Development

Center, in direct violation of the American Bar association's rules relating to ex parte contact with represented parties and the applicable Department of Justice Touhy regulations. While more serious sanctions might be available for these violations, we simply respectfully request that the Court strike or disregard this evidence, as the least disruptive solution to such violations.

### A. Dr. Steen Inappropriately Testifies As An Undisclosed Economics Expert Section II.B.1 Of Plaintiff's Brief

In section II.B.1 of ATC's second supplemental motion, ATC's counsel testifies as to his view of the "economic mechanisms of avoided costs," based upon his asserted expertise in economics. See Pl. 2nd Supp. Mot. 2-4, endnote. This economic analysis provides much of the basis for ATC's damage claim. While there are several problems with Dr. Steen incorporating such previously undisclosed expert testimony into his brief, one immediate difficulty is that Dr. Steen is serving as both a lawyer and an expert fact witness at the same time.

"It is elementary that counsel should avoid assuming the dual roles of lawyer and witness." Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 872 F. Supp. 1346, 1380 (E.D. Pa. 1994). Rule 3.7(a) of the American Bar Association Model Rules of Professional Conduct ("ABA Rules"), which have been adopted by this Court through Rule 83.2(c) of this Court's Rules, provide as follows:

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) the disqualification of the lawyer would work substantial hardship on the client.

ABA Rules 3.7(a). The rationale behind the rule "is to address certain concerns: that a lawyer who is both trial lawyer and witness will appear to vouch for his or her own credibility . . . ." Massachusetts School, 872 F. Supp. at 1380. Further, the rule is intended to preclude the possibility "that the lawyer-witness will have increased stature when being cross-examined; that there may be the appearance of impropriety if the lawyer is seen as distorting the truth for the sake of the client; and that advocacy and testimony will become impermissibly mixed." Id.

The ABA Rule prohibiting the lawyer as a witness "is aimed at eliminating confusion about a lawyer's role." ABA Annotated Model Rules of Professional Conduct, Rule 3.7, annotation. The adversary system works best when the roles of the judges, of the attorneys, and of the witnesses are clearly defined; any mixing of these roles inevitably diminishes the effectiveness of the entire system. Id.; United States v. Defazio, 899 F.2d 626, 631 (7th Cir. 1990); General Mills Supply Co. v. SCA Services, Inc., 697 F.2d 704, 712 (6th Cir. 1982) (ABA canons demand separation of roles of advocate and witness).

An advocate may not place himself in the position of an unsworn witness and implicitly put his own credibility at issue. Mannhalt v. Reed, 847 F.2d 576, 581 (9th Cir. 1988); United States v. Kwang Fu Peng, 766 F.2d 82, 86 (2d Cir. 1985); United States v. McKeon, 738 F.2d 26, 35 (2d Cir. 1984); United States v. Cunningham, 672 F.2d 1064, 1075 (2d Cir. 1982), cert. denied, 466 U.S. 951 (1984). The rule's prohibition eliminates the opportunity for an attorney to mix law and fact, and testify as an unsworn witness while assuming the role of an advocate.

Strong policy considerations underlying the rule that preclude Dr. Steen from serving as an expert witness and an advocate. First, the rule is designed to protect the attorney's client. If the court permits the attorney to testify, the attorney "becomes more easily impeachable for

interest and thus may be a less effective witness." ABA Model Code Ethical Consideration 5-9, Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equip. Corp., 546 F.2d 530, 539-40 (3rd Cir. 1976); MacArthur v. Bank of New York, 524 F. Supp. 1205, 1208 (S.D.N.Y. 1981). The client's case may be unduly harmed by the very challenges made to the credibility of the testifying attorney, especially if these challenges are successful.

Second, the rule is designed to protect the adverse party from the unfair consequences of opposing an individual acting as advocate and witness. The adverse party's attorney may be handicapped in challenging the testimony of another attorney, by reason of professional courtesy or etiquette, or otherwise. Also, the court may feel compelled to place undue weight upon the testimony of an officer of the court. Id.

Third, the rule is designed to protect the integrity of the legal profession. It precludes speculation that a lawyer offering testimony is distorting the truth for a client's sake; such speculation only diminishes the public's respect for and confidence in the legal profession. United States ex rel. Sheldon Elec. Co. v. Blackhawk Heating and Plumbing Co., 423 F. Supp. 486, 489 (S.D.N.Y. 1976). As noted above, it precludes the unseemly situation where an attorney's own credibility as a witness is called into question, confusing functions of advocate and witness.

Finally, and most importantly, the rule is designed to protect the integrity of the judicial system. General Mill Supply Co. v. SCA Serv., Inc., 697 F.2d at 712. It promotes the employment of counsel whose independent judgment will not be impaired by the potentially conflicting responsibilities of being a witness for the client. Harrison v. Keystone Coca-Cola Bottling Co., 428 F. Supp. 149, 152 (M.D. Pa. 1977).

While the normal sanction for presenting such prohibited testimony is disqualification from participation in the case, the Court may also impose more limited remedy of striking or discounting the lawyer's testimony. See Aghili v. Banks, 63 S.W.3d 812 (Tex. App. 2001) (testimony by affidavit in summary judgment proceeding); Smith v. Wharton, 78 S.W.3d 79 (Ark. 2002). This remedy is especially appropriate here, where Dr. Steen's testimony is limited to expert testimony provided in a supplemental motion for summary judgment to the Court. See Aghili, 63 S.W.3d 812. If Dr. Steen's expert testimony is removed from the record or otherwise discounted, the Court could ensure that the requirement of ABA Rule 3.7 are met, without unduly harming ATC at this late stage of the litigation by the disqualification of its attorney.

Because Dr. Steen's expert economic analysis is in direct violation of the rule that counsel of record not also serve as a witness in the underlying case, we respectfully request that the Court disregard or strike section II.B.1 of ATC's second supplemental motion, and all references in reliance upon this section of his motion, and prohibit Dr. Steen from serving as both an expert witness and advocate in this matter.

Further, even if the Court considered permitting Dr. Steen to serve as both an advocate and expert, Dr. Steen has not complied with the Court's criteria for expert testimony. Specifically, the Government has not received an expert report from Dr. Steen, nor was he previously disclosed in discovery as a potential expert witness. See RCFC 26(a)(2). Accordingly, it is inappropriate for him to serve as an expert witness at this time, and we respectfully request that the Court disregard or strike section II.B.1 of ATC's second supplemental motion, and all references in reliance upon this section of his motion for presenting previously undisclosed expert testimony. We also respectfully request that the Court require Dr.

Steen to comply with the Court's Rules regarding expert testimony, and produce an expert report. See RCFC 26(a)(2)(c). Further, we respectfully request that the Court reopen discovery for the limited purpose of affording the Government an opportunity to depose and take discovery from this previously undisclosed expert witness, and prepare our own rebuttal report, to the extent necessary. Id.

### B. The Declaration Of Jennifer Lee Was Obtained In Violation Of The Rules Concerning Ex Parte Communications And The Applicable Department Of Justice Touhy Regulations

Attached to plaintiff's motion is a declaration by Jennifer Lee, the former director of LDC. This declaration, however, was improperly obtained in violation of both the ABA Rules concerning ex parte contact with represented persons and the Department of Justice's Touhy regulations. For these reasons, we respectfully request that the Court strike or disregard this declaration as evidence.

Rule 4.2 of the ABA Rules provides as follows:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

ABA Rule 4.2. Because this rule protects the lawyer-client relationship, the client cannot waive it. ABA Formal Ethics Op. 95-396 (1995); Polycast Tech. Corp. v. Uniroyal, Inc., 129 F.R.D. 621 (S.D.N.Y. 1990) (rule prevents lawyers from eliciting "unwise statements" from opponents, protects privileged information, and facilitates settlements by allowing lawyers to conduct negotiations). Indeed, even if it was the client who initiates the contact with counsel for the

opposing party, the lawyer is required to "immediately terminate communication with a person." ABA Rule 4.2 cmt. 3.

Ms. Lee is represented by the Government in connection with the issues in this case. Def. 2nd Supp. App. 1-3 (representation letter).[1]

Further, Dr. Steen should be aware of his obligations with regard to not contacting Ms. Lee. On November 7, 2002, Dr. Steen served a subpoena upon the Government for Ms. Lee's deposition, noting that such service was "appropriate because you will represent [Ms.] Lee as LDC's former director." Def. App. 4. See also id. at 5, 7. On November 17, 2002, Dr. Steen sent an e-mail to the Government, discussing Ms. Lee. Dr. Steen expressly acknowledged that '[a]ssuming that you will represent her, I may not contact her directly." Def. App. 8 (emphasis added). Finally, the Government represented Ms. Lee at her deposition. Despite this discussion, ATC contacted Ms. Lee, and acquired an ambiguous declaration from her that could be read to contradict her prior deposition testimony in support of their motion for reconsideration. Because Ms. Lee's declaration was obtained in violation of ABA Rule 4.2, we respectfully request that the Court strike or disregard the declaration.

In addition, even if Ms. Lee were not expressly represented by the Department of Justice, as a former employee of the Immigration and Naturalization Service, Ms. Lee is covered by the Department of Justice's Touhy regulations, which requires prior administrative authorization before a former employee may provide testimony or produce documents with regard to the

[1]"Def. 2nd Supp. App. ___" refers to a page in the appendix attached to this brief.

performance of her official duties.[2] See generally 5 U.S.C § 301; United States ex rel. Touhy v. Ragen, 340 U.S. 462, 472-473 (1951). Specifically, the Department of Justice's Touhy regulations

> set[] forth procedures to be followed with respect to the production or disclosure of any material contained in the files of the Department, any information relating to material contained in the files of the Department, or any information acquired by any person while such person was an employee of the Department as a part of the performance of that person's official duties or because of that person's official status:
>
> > (1) In all federal and state proceedings in which the United States is a party

28 C.F.R. § 16.21(a) (emphasis added). The regulations provide different authorization procedures in connection with providing information, depending upon whether the United States is or is not a party to a proceeding. See id. § 16.22, .23, .24.

Ms. Lee's declaration is clearly based upon information acquired by her while she "was an employee of the Department as a part of the performance of [her] official duties or because of [her] official status." 28 C.F.R. § 16.21(a). Accordingly, ATC's counsel could only properly obtain her testimony after following the steps set forth in her regulations or through accepted formal discovery. Having failed to do so, the proper remedy is for the Court to strike her

---

[2] On March 1, 2003, the immigration enforcement functions of the Immigration and Naturalization Service - including the Leadership Development Center - were transitioned from the Department of Justice into the Department of Homeland Security, Immigration and Customs Enforcement. The Department of Homeland Security's Touhy regulations may be found at 6 C.F.R. §§ 5.41-.49. However, because Ms. Lee was director of the Immigration and Naturalization Service when it was a component of the Department of Justice, and was never an employee or former employee of the Department of Homeland Security, we have applied the Department of Justice's regulations.

declaration from the record.[3] See Boca Raton Cmty. Hosp. v. Tenet Healthcare Corp., 2006 WL 1523234 (S.D. Fla. 2006) (striking declaration obtained in violation of the Department of Health and Human Services' Touhy regulations).

Because Ms. Lee's declaration was obtained in violation of the rules forbidding ex parte contact with represented persons and the Department of Justice's Touhy regulations, we respectfully request that the Court strike Ms. Lee's declaration, and all references to the declaration, from the record.

**II. Plaintiff's Fiscal Year 2001 Damages Claim Exceeds The Scope Of Ms. Lee's Purported Implied Authority**

Turning to the merits of ATC's damages claim, ATC asserts that it suffered damages of $180,900 for fiscal year 2001, based upon contract price minus certain expenses avoided. Pl. 2nd Supp. App. at 4.[4] According to ATC's analysis, Ms. Lee entered into a contract with them for fiscal year 2001 for approximately $456,000.[5] Even assuming that Ms. Lee possessed the implied authority to enter into some type of contract with ATC,[6] a contract of this magnitude would have exceeded the scope of any potential implied authority.

---

[3] The Touhy regulations, however, do not forbid Ms. Lee from testifying at trial or a deposition. See United States v. Diabetes Treatment Centers of America, 474 F. Supp. 2d 75 (D.C. 2007).

[4] "Pl. 2nd Supp. App. ___" refers to a page in the appendix attached to plaintiff's second supplemental motion for summary judgment on damages.

[5] This estimate is derived by multiplying the purported usual payment for a particular class by the number of classes in the alleged fiscal year 2001 schedule.

[6] The Government, however, respectfully disagrees that Ms. Lee possessed any authority to contract for ATC's services, as we have previously set forth in our motions.

The Court has previously held that Ms. Lee was granted the implied authority to contract "from both her supervisors . . . by using the SF-182." Advanced Team Concepts v. United States, 68 Fed. Cl. 147, 151 (2005). The SF-182, however, is a simplified acquisition form, and is limited to purchases within the simplified acquisition threshold. See Def. 2nd Supp. App. 11. (Office of Personnel Management Training Policy Handbook). Simplified acquisitions are expressly limited by statute and the FAR to $100,000 or less.[7] See 10 U.S.C. § 2304(g); 48 U.S.C. § 253(g); 48 C.F.R. § 2.101 (2000) ("Simplified acquisition threshold means $100,000"). Accordingly, if the fiscal year 2001 schedule serves as a valid contract, and was within the scope of Ms. Lee's implied authority, the amount of the contract must fall within the simplified acquisition threshold of $100,000. Because the Government paid ATC $262,462 for fiscal year 2001, an amount in excess of the maximum permitted contract price, ATC is entitled to no damages for fiscal year 2001. See Def. 2nd Supp. 15-39.

The only way that Ms. Lee arguably might have possessed the authority to exceed this threshold would be if each class is treated as a separate contract. However, in denying the Government's previous motion for clarification, the Court declined to treat the classes as separate contracts, but rather aggregated the classes together based upon the schedule, and held that the

[7] The applicable training policy handbook refers to the small purchase dollar threshold, Def. App. 11, which was $25,000 at the time that the Handbook was drafted. See 48 C.F.R. pt 13.5 (1994). However, the Federal Acquisition Streamlining Act of 1994 ("FASA"), replaced the small purchase procedures with the simplified acquisition procedures for a procurement of up to $100,000. The handbook has since been amended to reflect this change. Def. 2nd Supp. 12-14. Because the contract in question took place after FASA was enacted, we have used the larger threshold.

entire schedule served as the contract.[8] Advanced Team Concepts v. United States, 77 Fed. Cl. 111, 113-14 (2007). See also Advanced Team Concepts, 68 Fed. Cl. at 151.

In the alternative, to the extent that the Court determines that ATC is entitled to an amount in excess of the sum for which Ms. Lee would have possessed the authority to contract, we respectfully request that the Court reconsider its ruling that Ms. Lee possessed the implied authority to enter into such a contract. In this case, the Government would also owe ATC no damages for fiscal year 2001, because there was no valid contract to be breached.

## III. Ms. Lee's July 6, 2000 E-Mail Does Not Constitute A Contract

ATC seeks reconsideration of the Court's prior determination that a July 6, 2000 e-mail sent to Larry Meeker from Jennifer Lee did not constitute a contract. In order to prevail upon a motion for reconsideration, the movant must show that: (a) an intervening change in the controlling law has occurred; (b) evidence not previously available has become available; or (c) that the motion is necessary to prevent manifest injustice. See Bishop v. United States, 26 Cl. Ct. 281, 286 (1991). "A court, therefore, will not grant a motion for reconsideration if the movant 'merely reasserts . . . arguments previously made . . . all of which were carefully considered by the Court.'" Crowley v. United States, 56 Fed. Cl. 291, 294 (2003), (quoting Ammex, Inc. v. United States, 52 Fed. Cl. 555, 557 (2002)).

In its September 28, 2005 opinion, the Court concluded that an implied-in-fact contract existed between LDC and ATC for fiscal year 2001. See Advanced Team Concepts, 68 Fed. Cl. 147 (2005). Specifically, the Court determined that prior to fiscal year 2001, Ms. Lee "circulated

[8] Based upon this analysis, the Court determined that the Christian doctrine was inapplicable to all classes on the fiscal year 2001 schedule, even those not specifically cancelled for otherwise legitimate reasons.

a schedule to various vendors, as she has done since the inception of LDC." Id. at 151 (emphasis added). The Court held that this schedule served as an implied-in-fact contract, and that Mr. Langton "breached that agreement by canceling the 2001 academic year implied-in-fact contract with ATC." Id. The Court, however, also expressly held that LDC did not enter into a contract with ATC for fiscal year 2002 classes. Specifically, the Court reasoned that although the formal schedules had served as implied-in-fact contracts in the past, Mr. Langton's use of a disclaimer with the fiscal year 2002 schedule created an uncertainty in the offer. The period covered by Ms. Lee's e-mail is included in the period covered by Mr. Langton's fiscal year 2002 schedule. Compare Pl App. 243-246 (Mr. Langton's initial proposed schedule) with Pl. App. 362 (Ms. Lee's e-mail).

Prior to the Court's initial opinion, ATC never had argued to the Court that the July 6, 2000 e-mail constituted the basis for an implied-in-fact contract. Instead, ATC contended that the annual schedules created contractual commitments, based upon LDC's long-standing practices and alleged treatment of the schedules as such. See Pl. Mot. Summ. J. 4, 7; Pl. PFUF ¶¶ 5-7. To hold that an initial scheduling e-mail constituted a contract in itself is inconsistent with plaintiff's prior arguments, contrary to the logic of the Court's opinion, and undermines the Court's determination regarding the special status of the formal annual schedules as implied-in-fact contracts. See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 332-33 (1971) (affirming denial of motion for leave to amend, when the defenses sought to be added "were in a sense inconsistent" with the party's other claims). If the schedules served as an implied-in-fact contracts because of LDC's long standing practice, as the Court has ruled, then the initial e-mail correspondence that goes into putting a schedule together is not itself contract.

Indeed, Ms. Lee has not testified that she viewed this e-mail as a contractual commitment on the part of the Government. While she has used the language of offer in her declaration, her statement offers little to provide what Ms. Lee's understanding of this term was, and whether she meant the e-mail to have legally binding implications. At best, it could be argued that Ms. Lee's declaration places a material fact in dispute. Given the Court's holding that LDC's long standing practice was to treat the schedules as contracts, however, the declaration does not support summary judgment.

Indeed, if Ms. Lee did possess such intent, she would have been acting in violation of the Anti-Deficiency Act. The Anti-Deficiency Act provides that "[a]n officer or employee of the United States Government or of the District of Columbia government may not make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation." 31 U.S.C. § 1341(a)(1)(A). Accordingly, "[t]he Anti-Deficiency Act bars a federal employee or agency from entering into a contract for future payment of money in advance of, or in excess of, an existing appropriation." Hercules, Inc. v. United States, 516 U.S. 417, 427 (1996) (citing 31 U.S.C. § 1341). See also RCS Enterprises v. United States, 57 Fed. Cl. 590, 593-96 (2003). Violation of the Anti-Deficiency Act may result in an adverse personnel action or criminal penalties against the Government official responsible for committing such a violation. See 31 U.S.C. §§ 1349, 1350. Accordingly, a Government agent does not possess the authority to enter into a contract in violation of the Anti-Deficiency Act. Rick's Mushroom Service, Inc. v. United States, 76 Fed. Cl. 250 (2007), aff'd, ___ F.3d ___, Fed. Cir. No. 2007-5137, slip opinion (April 2, 2007).

It is clear from Ms. Lee's deposition testimony, however, that she would not have possessed the budget nor appropriations to enter into such a contract in July 2000 for fiscal year 2002. When asked about the timing of meetings setting LDC's budget, Ms. Lee responded that such meetings generally occurred in the autumn immediately prior to the beginning of the fiscal year.

> A: Generally, it happened right around October/November, when we had some sense of what Congress was going to give us.
> Q: October/November, then that would be the budget for the immediate or the following year?
> A: Correct. Immediate year. Oh, my goodness we'd never plan a whole year ahead of time.

Pl. App. 297-98 (emphasis added).

Accordingly, we respectfully request that the Court deny ATC's request for reconsideration and re-affirm that Ms. Lee's July 6, 2000 e-mail does not constitute a contract.

## IV. Advanced Team Concepts Fails To Meet Its Burden To Demonstrate That It Is Entitled To Summary Judgment on Damages

As we have repeatedly noted, "[t]he non-breaching party 'should on no account get more than would have accrued if the contract had been performed.'" White v. Delta Const. Intern., Inc., 285 F.3d 1040 (Fed. Cir. 2002) (quoting DPJ Co. v. FDIC), 30 F.3d 247, 250 (1st Cir. 1994)). More specifically, where plaintiff asserts expectation damages, "the costs resulting from the breach must be reduced by the costs, if any, that the plaintiffs would have experienced in the absence of the breach." Bluebonnet Sav. Bank v. United States, 339 F.3d 1344, 1345 (Fed. Cir. 2003). ATC did not teach any of the classes it listed in the complaint. Nevertheless, it asserts

that it still suffered damages by virtue of not being allowed to spend its time and resources performing such services.

The central flaw in ATC's motion remains the gap in its attempt to work backwards from the contract price to calculate its expectation damages for the classes that Mr. Meeker taught. While the contract price is a legitimate place to begin any damages analysis, ATC fails to demonstrate its actual lost profits by deducting all costs avoided. See Howell v. United States, 51 Fed. Cl. 516 (2002) (plaintiff was entitled to collect the contract price less potential costs avoided because he did not actually perform the work). ATC's approach remains incomplete, as, despite the Court's suggestion, ATC refuses to attempt to place a comparative value on Mr. Meeker's services to the company as an executive, and Mr. Meeker's services as a teacher.

ATC attempts to avoid the burden of demonstrating its lost profits with regard to the classes taught by Mr. Meeker by constructing a contract breach damages model based upon Parker v. Twentieth Century Fox Film Corp., 474 P.2d 689 (Cal. 1970). Parker, however, is distinguishable from the present case. Parker is a labor law case, focused upon the damages for the "wrongful discharge" of Ms. Parker, rather a mere breach of contract. The plaintiff, Shirley McLane Parker, and the defendant, Twentieth Century Fox, were directly in privity of contract. In contrast, here Mr. Meeker and the Government were not in privity of contract, rather ATC and the Government were in privity. Accordingly, the contract at issue was not for Mr. Meeker's time, as much as it was for ATC's teaching services. Mr. Meeker may have been the sole shareholder for ATC, but ATC is the only real party in interest in this case (nor has Mr. Meeker brought suit in his individual capacity). Algonac Mfg. Co. v. United States, 192 Ct. Cl. 649, 428 F.2d 1241, 1249 (1970); Computer Prods. Int'l, Inc. v. United States, 26 Cl. Ct. 518, 529 (1992).

Further, ATC's calculations fail to account to the profit from additional classes (that were not on the schedule) that ATC taught for the Government in fiscal year 2001. ATC's theory of the case is that the alleged contract required cancelled classes to be replaced by the Government. However, in fiscal year 2001, ATC taught two additional classes for the Government that were not on the schedule. Specifically, on March 3-7, 2001, ATC taught an additional team building class for the Government, and was paid $5,562. Def. 2nd Supp. App. 29. Further, during the week of June 25, 2001, ATC taught an additional consultation and training services class for the Government, and was paid $8,000. Def. 2nd Supp. App. 20. In accordance with its replacement theory of the case, ATC's damage claim must be reduced by the profit from these two additional classes.

Finally, even setting aside these concerns, the amount of actual damages allegedly suffered by ATC also remains a contested material fact. While ATC's conclusory statements on damages make it impossible to analyze ATC's claims with careful accuracy, several flaws are immediately apparent in its blanket assertions. First, ATC's supplemental motion apparently treats payments to instructors (excluding Mr. Meeker) as the sole cost it was able to avoid. ATC makes no effort to account for material or other administrative costs, nor does ATC assert that there were no such costs incurred. Second, ATC provides no support for its claim that the amount of the salaries avoided is accurate. Indeed, there is no record evidence regarding such salaries. While ATC's supplemental motion asserts that it reduced salaries by only $46,200; ATC's tax filings show a reduction in overall salaries between 2000 and 2001 of $160,136. See Def. Supp. App. 1, 5. This disparity alone is enough to create a contested material fact.

Finally, while Mr. Meeker asserts that he endeavored to "mitigate the company's lost business," the final damages calculation fails to account to any such mitigation. ATC's assertion that it could in no way mitigate for any scheduled classes cancelled by LDC for up to one full year after notice of such cancellation lacks any credibility.

**CONCLUSION**

For the foregoing reasons, and the reasons stated in our previous opposition brief, we respectfully request that the Court deny plaintiff's motion for summary judgment on damages.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L St., NW
Washington, D.C. 20530
Tel: (202) 616-2377
Fax: (202) 305-7643
steven.mager@usdoj.gov

April 14, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify under penalty of perjury that on this 14th day of April 2008, copy of the foregoing "RESPONSE TO PLAINTIFF'S SECOND SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT ON DAMAGES" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Steven M. Mager
Steven M. Mager
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice