**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ADVANCED TEAM CONCEPTS, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 02-l97C** |
| **v.** | ) | **(Senior Judge Smith)** |
| | ) | |
| **UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ATTORNEY DECLARATION OF CHARLES H. STEEN**

1. My name is Charles H. Steen. I am the attorney for plaintiff Advanced Team Concepts, Inc. in the above-styled matter. The exhibits referenced in this declaration were previously filed by the Government. They were referenced using the form "Def. 2nd Supp. App. __", and the same form is used herein.

2. The facts stated herein are true and correct, and based upon my personal knowledge. These facts are, moreover, a verbatim version of the facts stated in Section II(B)(1) of ATC's Reply in Support of Second Motion for Summary Judgment on Damages. The reason the Reply and this Declaration are the same is because "the facts are the facts".

3. The exhibits proffered by the Government simply do not flesh out the full story about Dir. Lee's representation. From the beginning of this case ATC knew Dir. Lee would be an important witness, and that it would need her deposition.

4. In trying to set up Dir. Lee's deposition, ATC's counsel, Steen, the undersigned, conducted several calls with DOJ attorney Dorrie Finnerman, trying to determine whether someone from the Government would represent Lee. A concise answer was simply not forthcoming. Rather, Finnerman repeatedly informed Steen that a decision had not yet been made because of: (1) ordinary institutional slowness; and (2) a potential conflict of interest. For several weeks Finnerman simply

"sat on the fence" about Lee's representation, effectively trying to have it both ways.

5. In early November 2002, Finnerman informed Steen by telephone that she probably would represent Dir. Lee at her deposition, but that a decision still had not been made about whether the Government would, or could, represent Dir. Lee after that. The problem was that the Government was in a conflicted position. On the one hand, Dir. Lee, as a former LDC director, was nominally entitled to representation. On the other hand, it was becoming clear that the Government's defense would require throwing Dir. Lee under the proverbial bus. More specifically, to vindicate Dir. Langton's conduct in terminating ATC the Government would have to assert that Dir. Lee's conduct was unauthorized, even though Dir. Lee would testify that she was authorized to contract with ATC.

6. ATC forced the issue by serving its subpoena on Dir. Lee on November 7, 2002, by and through Finnerman, setting the deposition for December 9, 2002, at Steen's offices in Dallas, Texas. Def. 2nd Supp. App. 4-7. At the time, Finnerman still did not even know how to contact Lee. Steen, in turn, provided Lee's contact information to Finnerman via email sent November 17, 2002. Def. 2nd Supp. App. 8.

7. By agreement the deposition was eventually set for January 23, 2003, in Florida. At the deposition Finnerman was careful not to make a formal "on the record" notice of her appearance for Dir. Lee. Steen did, for ATC, but Finnerman and her colleague Faustino did not. ATC, moreover, was certainly never provided with the Government's engagement letter, Def. 2nd Supp. App. 1-3, and Finnerman, equally certainly, never to this day, filed a "notice of appearance" for Dir. Lee to make the representation clear.

8. After the deposition Finnerman and Steen at least once again discussed Finnerman's now-sharpened actual conflict, and Finnerman was resolved that going forward Dir. Lee should have

separate counsel. No attorney to date has noticed appearance for Dir. Lee, however, and ATC has nothing from anyone stating simply, "I represent Jennifer Lee." As regards a motion to withdraw, Finnerman said she did not believe one was necessary, but that Dir. Lee should have a chance to decide what she wanted to do. Steen and ATC have no knowledge of any subsequent communications between the Government and Dir. Lee although, according to their engagement letter, and first principles, Dir. Lee is entitled to notification of the conflict, and of her right to retain private counsel.

9. Eventually Finnerman went off the litigation papers, and Steven Mager appeared for the Government. Mager has not, however, given notice, or any indication, to Steen that he represents Dir. Lee.

10. Taken together, to Steen and ATC's knowledge and understanding, the Government's limited representation of Dir. Lee was concluded with her deposition. If the Government represents Dir. Lee, or she has separate counsel, Steen and ATC have never been informed of it.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Signed: May 1, 2008

/s/ Charles H. Steen
Charles H. Steen